## STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**KEVIN TAYLOR,**
**Claimant Below, Petitioner**

**vs.)    No. 20-0804** (BOR Appeal No. 2055300)
                        (Claim No. 2019007232)

**CLAY TRUCKING, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Kevin Taylor, by counsel Lori J. Withrow, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Clay Trucking, Inc. ("Clay Trucking"), by counsel Sean Harter, filed a timely response.

The issue on appeal is compensability of the claim. The claims administrator rejected the claim on September 28, 2018. On April 30, 2020, the Workers' Compensation Office of Judges ("Office of Judges") affirmed the claims administrator's decision. This appeal arises from the Board of Review's Order dated September 18, 2020, in which the Board affirmed the Order of the Office of Judges.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

> (b) In reviewing a decision of the board of review, the supreme court of appeals shall consider the record provided by the board and give deference to the board's findings, reasoning and conclusions.

1

(c) If the decision of the board represents an affirmation of a prior ruling by both the commission and the office of judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of Constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo re-weighing of the evidentiary record.

*See Hammons v. W. Va. Off. of Ins. Comm'r,* 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. Taylor alleges that he suffered a back injury after hitting a pothole in his coal truck on August 15, 2018. He reported that pain shot through his lower back and up his spine. He decided to go home and walked to his vehicle. As he was getting in his vehicle, pain shot through his back again and knocked him to the ground. He was unable to get up due to the pain, and he was taken to Raleigh General Hospital for treatment. He was diagnosed with low back L4-5 disc pain due to an occupational injury. Mr. Taylor filed an Employees' and Physicians' Report of Injury application on August 16, 2018. While at Raleigh General Hospital, Mr. Taylor underwent a CT scan that did not find an acute fracture of the lumbar spine. However, the CT scan did reveal multilevel degenerative facet arthropathy, disc bulge posteriorly at L4-5, as well as posterior ligamentous hypertrophy and facet arthropathy contributing to spinal canal stenosis.

Charles W. Hensley, Clay Trucking's night shift truck boss, reported in a handwritten statement that Mr. Taylor complained of back pain when he arrived at work at 4:00 p.m., on August 15, 2018. Mr. Hensley asked Mr. Taylor if he would be okay, and Mr. Taylor said that he pulled a muscle at home. Later that night, Mr. Taylor said that he hit a pothole and his back started hurting to the point that he wanted to go home. Mr. Hensley stated that Mr. Taylor appeared to be in a lot of pain, and he was later taken to Raleigh General Hospital for treatment.

Following his injury, Mr. Taylor sought treatment with Ralph Simms, D.O., his treating physician. On August 28, 2018, Dr. Simms noted that sometimes pain moved down Mr. Taylor's leg like a Charlie horse in the calf muscle. The diagnosis was listed as lumbar disc disease, disc herniation bulging, and spinal stenosis. Subsequently, Dr. Simms submitted follow-up reports indicating a diagnosis of lumbar spinal stenosis with radiculopathy. The claims administrator considered Mr. Taylor's application and issued an Order on September 28, 2018, stating that documentation from Dr. Simms was received with a diagnosis of lumbar disc disease, and after an investigation, the claim was rejected as a non-work-related injury. Mr. Taylor protested the claims administrator's rejection of his claim for workers' compensation benefits.

On August 9, 2019, Clay Trucking submitted an affidavit of Kevin G. Nutter, who was the safety director for the employer on August 15, 2018. He reported that it was his hand-written

statement dated August 16, 2018. Mr. Nutter reported that Mr. Taylor had some back pain at the start of his shift, and during his shift he hit a pothole that caused him to suffer severe pain. He tried to go home, but a mechanic found him on the ground in pain. An ambulance was called and Mr. Taylor was transported to Raleigh General Hospital.

Jonathan Luchs, M.D., a Board-certified radiologist, interpreted Mr. Taylor's lumbar spine CT scan of August 16, 2018. In his report dated October 7, 2019, Dr. Luchs stated that all of the abnormalities revealed by CT scan were chronic, as opposed to acute, and included the following: multilevel degenerative facet arthropathy, as well as a bulge and stenosis at L4-L5; chronic disc bulges at other levels of the lumbar spine; and chronic endplate osteophytes. Dr. Luchs also reviewed Mr. Taylor's lumbar MRI study of September 14, 2018, and reported on October 8, 2019, that he concurred with the findings of the study. He concluded that the conditions identified on the exam were chronic.

Prasadarao B. Mukkamala, M.D., performed an Independent Medical Evaluation on October 28, 2019. Mr. Taylor complained of pain in the low back with radiation to the left lower extremity. Examination of the lower extremities revealed normal range of motion for all the joints in both lower extremities. The lumbar spine range of motion measurements were fairly consistent with repeated attempts, and Mr. Taylor was able to ambulate independently while walking with a slow, but normal, gait with no limp. Dr. Mukkamala's diagnosis was nonspecific low back pain associated with degenerative spondyloarthropathy. The abnormalities revealed on the CT scan and the MRI were naturally occurring age-related changes. Dr. Mukkamala concluded that there was no credible objective medical evidence that Mr. Taylor sustained a discrete injury in the course of and as a result of driving a truck at work on August 15, 2018. Although there was evidence of continued degenerative spondyloarthropathy, Dr. Mukkamala opined that there was no evidence of radiculopathy.

Mr. Taylor testified in a January 29, 2019, deposition that when he started his shift on August 15, 2018, he had a little backache, just like everyone has now and then. He testified that while at work, he hit a pothole, and his air seat went down and smacked the floor. Pain immediately shot through his spine. Mr. Taylor stated that his neck cracked and his eyes flashed. He also noted that he slammed on the brakes and stopped. He had to sit for a few minutes and gather himself. He dumped the load of coal off and he went to the Little General store and bought pillows to put behind his back. Mr. Taylor testified that he later hit another pot hole and he again experienced pain to the point to where he pulled over and sat on the side of the road. When he arrived back at his jobsite, he told the mechanics that they were going to have to park his truck because he hurt his back. As he walked toward his pick up truck, he fell to the ground and could not get back up. Mr. Taylor said that he had never felt that kind of pain before. He was transported to Raleigh General Hospital.

Mr. Taylor continued his treatment with Dr. Simms over an extended period of time. Progress notes throughout treatment indicate that sometimes pain would move down his leg like a Charlie horse in the calf. Dr. Simms initially diagnosed Mr. Taylor with a lumbar sprain/strain, which usually has a duration of care not to exceed eight weeks. However, as of December 10,

2019, sixteen months after the alleged injury, Dr. Simms still had not released him to return to work due to back pain.

In a Final Decision dated April 30, 2020, the Office of Judges concluded that Mr. Taylor failed to meet his burden of proof that he suffered a compensable injury in the course of and as a result of his employment on August 15, 2018, because a preponderance of the evidence establishes that he has a preexisting low back condition. Although Mr. Taylor argues that he suffered a discrete new injury due to his injury, the Office of Judges concluded that both Drs. Luchs and Mukkamala found no radiographic evidence of an acute back injury having been sustained on August 15, 2018. Dr. Luchs detected nothing but "chronic" abnormalities on the MRI taken of Mr. Taylor's lumbar spine on September 14, 2018, and he characterized all of the MRI's abnormalities as degenerative in nature. Dr. Mukkamala opined that Mr. Taylor did not suffer a discrete new injury and stated, "it is my professional opinion that there was no credible objective medical evidence that the claimant sustained a discrete injury in the course of and as a result of driving a truck at work on August 15, 2018."

Although Mr. Taylor testified on January 18, 2019, that he injured his lower back when the coal truck that he was driving struck a pothole, the Office of Judges found his testimony to be ambiguous and/or contradictory. He initially testified that when he started work at his usual time on August 15, 2018, he had no lower back problems. However, upon cross-examination, Mr. Taylor admitted that he was experiencing slight back pains prior to the start of his shift. Also, Mr. Hensley, the night shift supervisor, authored a handwritten statement indicating that Mr. Taylor complained of back pain when he arrived at work on August 15, 2018. The fact that he was experiencing back pain when he arrived at work that day is corroborated by the handwritten statement of Mr. Nutter, Clay Trucking's safety director, who reported that he had complained of back pain prior to his shift. Based upon the preponderance of the evidence of record, the Office of Judges found that Mr. Taylor has a preexisting lower back condition, and he did not sustain a discrete new back injury at work on August 15, 2018. As a result, the claims administrator's Order dated September 28, 2018, which rejected Mr. Taylor's application for workers' compensation benefits, was affirmed. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed the decision on September 18, 2020.

After review, we agree with the decision of the Office of Judges, as affirmed by the Board of Review. The preponderance of the evidence of record indicates that Mr. Taylor did not suffer a discrete new back injury in the course of and resulting from his employment on August 15, 2018. As such, the evidence establishes that Mr. Taylor was not rendered temporarily and totally disabled by a work-related injury.

Affirmed.

**ISSUED: February 1, 2022**


**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton